## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WAEV INC.,<br><br>2114 W. Ball Road<br>Anaheim, CA 92804<br>                Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, and AVIVA ARON-DINE, IN HER OFFICIAL CAPACITY AS ACTING ASSISTANT SECRETARY<br><br>1500 Pennsylvania Avenue, NW<br>Washington, D.C. 20220<br><br>INTERNAL REVENUE SERVICE, DANNY WERFEL, IN HIS OFFICIAL CAPACITY AS COMMISSIONER, INTERNAL REVENUE SERVICE, and DOUGLAS O'DONNELL, IN HIS OFFICIAL CAPACITY AS DEPUTY COMMISSIONER, INTERNAL REVENUE SERVICE,<br><br>1111 Constitution Avenue, NW<br>Washington, D.C. 20224<br><br>                Defendants. | Civil Action No. _____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## INTRODUCTION

1. This action seeks declaratory and injunctive relief from this Court holding unlawful and vacating a United States Department of the Treasury ("Treasury Department") final regulation entitled, "Clean Vehicle Credits Under Sections 25E and 30D; Transfer of Credits; Critical Minerals and Battery Components; Foreign Entities of Concern," (the "Final Rule") and

1

published in the *Federal Register* on May 6, 2024. 89 Fed. Reg. 37,706. The Final Rule provides the Treasury Department's and the Internal Revenue Service's ("IRS") determination of which vehicles qualify for certain Federal tax credits under the Inflation Reduction Act of 2022. *Id.* at 37,706.

2. Plaintiff Waev Inc. ("Waev") challenges the Final Rule, issued by Defendants Treasury Department, its Secretary, its Acting Assistant Secretary for Tax Policy, the IRS, its Commissioner, and its Deputy Commissioner as arbitrary and capricious and otherwise unlawful in violation of the Administrative Procedure Act. 5 U.S.C. §§ 501-706.

3. Waev manufactures, distributes, and sells the GEM line of street-legal, low-speed, electrically powered motor vehicles.

4. The Inflation Reduction Act provides tax credits for purchasers of motor vehicles that meet the Act's criteria for "new clean vehicles" and "qualified commercial clean vehicles." Through the Final Rule, however, Defendants unlawfully determined that "low-speed vehicles" do not qualify as an eligible "motor vehicle" for purpose of the new clean vehicle and qualified commercial clean vehicle tax credits because their maximum speed is 25 miles per hour or less. This determination is contrary to the applicable statutory definition of "motor vehicle," which contains no such exemption, contrary to the Inflation Reduction Act, and arbitrary and capricious under the Administrative Procedure Act.

5. As a result of the Final Rule's unlawful determination, Waev's GEM vehicles do not qualify for the new clean vehicle or qualified commercial clean vehicle tax credits. The fully-electric, street-legal GEM e4 with hard doors starts at approximately $22,500. The full amount of the new clean vehicle and qualified clean vehicle tax credit (between $3,750 and $7,500) is a significant portion of the GEM e4 purchase price and, therefore, constitutes a substantial

incentive for the purchase of new GEM vehicles. Indeed, Congress' entire purpose in authorizing the new clean vehicle and qualified commercial clean vehicle tax credits was to incentivize the increased sales of electric vehicles, like Waev's GEM vehicles. The Final Rule, therefore, significantly hampers Waev's ability to continue marketing and selling its GEM vehicles to private consumers that are most likely to take advantage of the new clean vehicle and qualified commercial clean vehicle tax credits.

## THE PARTIES

6. Waev is headquartered in Anaheim, California. It manufactures, distributes, markets, and supports the all-electric GEM low-speed vehicle brand as well as other electric vehicle brands. Waev engineers and manufactures its GEM vehicles at its 160,000 square foot Anaheim facility. With over 250 employees, Waev is a leading developer of low-speed, all-electric vehicles. Customers for its vehicles include aerospace, automotive, retail, and distribution companies, colleges and universities, corporations and resorts with large campuses, and several federal, state, and municipal government entities, in addition to private consumers.

7. The Treasury Department is a federal government agency as defined under the Administrative Procedure Act, 5 U.S.C. § 701(b)(1), and is charged with administering and enforcing the Internal Revenue Code. 26 U.S.C. § 7801(a)(1). Its headquarters is in Washington, D.C.

8. Janet Yellen is the United States Secretary of the Treasury. She is named as a defendant in her official capacity. Secretary Yellen administers and enforces the Internal Revenue Code, as described in 26 U.S.C. § 7801(a)(a), and acts as a member of the Internal Revenue Service Oversight Board. *Id.* § 7802(b)(1)(B). Further, Secretary Yellen prescribes the duties and powers of the IRS Commissioner. 26 U.S.C. § 7803(a)(2).

9. Aviva Aron-Dine is the Acting Assistant Secretary of the Treasury for Tax Policy. She is named as a defendant in her official capacity. Ms. Aron-Dine directs the Office of Tax Policy and implements tax policy on behalf of the Treasury Department. Ms. Aron-Dine approved the Final Rule prior to its publication on May 6, 2024. 89 Fed. Reg. at 37,775.

10. The IRS is a federal government agency as defined under the Administrative Procedure Act, 5 U.S.C. § 701(b)(1), and is charged with implementing the Internal Revenue Code and many of its related regulations. For all relevant purposes, the IRS is supervised by the Secretary of the Treasury. 26 U.S.C. § 7801(a)(1). Its headquarters is in Washington, D.C.

11. Danny Werfel is the Commissioner of the IRS. He is named as a defendant in his official capacity. Mr. Werfel exercises the Commissioner's powers, as described in 26 U.S.C. § 7803, including the administration and supervision of the internal revenue laws and regulations. As the Commissioner of the IRS, Mr. Werfel supervises the work of Defendant Douglas O'Donnell.

12. Douglas O'Donnell is the Deputy Commissioner of the IRS. He is named as a defendant in his official capacity. As Deputy Commissioner, Mr. O'Donnell oversees IRS operating divisions regarding taxpayer service, tax compliance, information technology, and operations. Mr. O'Donnell approved the Final Rule prior to its publication on May 6, 2024. 89 Fed. Reg. at 37,775. Mr. O'Donnell reports to Defendant Danny Werfel.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 (Administrative Procedure Act); 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (United States as a defendant), 28 U.S.C. § 2201 (declaratory judgment), and 28 U.S.C. § 2202 (injunctive relief).

14. Jurisdiction in this district is proper under 28 U.S.C. §§ 1391(b), (e) as this is the judicial district in which the Defendants reside and in which a substantial part of the events giving rise to the claim occurred.

15. This suit does not seek to enjoin the assessment or collection of a tax against any person.

## WAEV'S GEM LOW-SPEED VEHICLES

16. Waev was created in 2021 for the purpose of purchasing from Polaris Inc. and operating GEM and other electric vehicle businesses. Manufactured since 1998, the all-electric GEM low-speed vehicles are affordable, highly customizable, and allow for flexible charging, meaning that they can be charged from a standard 110 volt electric outlet, public charging stations, or even solar panels.

17. GEM vehicles have four wheels and are available in two-, four-, and six-seat models. All are designed to move people and cargo on local public roads at speeds of 25 miles per hour or less. They include many common automotive features, such as three-point safety belts, headlights, glass windshields, mirrors, disk brakes, backup cameras, and bumpers. GEM vehicles are fully compliant with Federal Motor Vehicle Safety Standard 500 for operation on public roads.

18. As fully electric vehicles, GEMs emit no carbon dioxide or other tailpipe pollutants and have a very low cost of operation at approximately three cents per mile. Depending on the GEM model and options selected, maximum range varies from 33 to 113 miles.

## THE INFLATION REDUCTION ACT OF 2022

19. President Biden signed the Inflation Reduction Act of 2022, Pub. L. No. 117-169, 136 Stat. 1818, into law on August 16, 2022.

20. Section 13401 of the Inflation Reduction Act establishes the "Clean Vehicle Credit." Section 13401 amends 26 U.S.C. § 30D. Congress created 26 U.S.C. § 30D through the Energy

Improvement and Extension Act of 2008 to provide tax credits for purchasing, and placing into service, new qualified plug-in electric motor vehicles. As amended by Section 13401 of the Inflation Reduction Act, 26 U.S.C. § 30D provides tax credits for "new clean vehicles." Specifically, Section 13401 authorized a $3,750 tax credit for qualifying vehicles meeting certain critical minerals requirements and a separate $3,750 tax credit for qualifying vehicles meeting certain battery component requirements. In total, a vehicle that qualifies under both provisions can be subject to a maximum tax credit of $7,500.

21. To qualify as a "new clean vehicle" under Section 30D(d)(1), as amended by Section 13401(c) and (g)(2) of the Inflation Reduction Act, vehicles must meet the following eight criteria: (1) the original use of the motor vehicle must commence with the taxpayer; (2) it must be acquired for use or lease by the taxpayer and not for resale; (3) it is made by a qualified manufacturer; (4) it "is treated as a motor vehicle for purposes of title II of the Clean Air Act," (5) it has a gross weight rating of less than 14,000 pounds, (6) it is propelled to a significant extent by an electric motor drawing from a battery with certain criteria, (7) its final assembly is in North America, and (8) it provides a report to the buyer containing certain information.

22. Section 13403 of the Inflation Reduction Act created 26 U.S.C. § 45W, providing tax credits for "qualified commercial clean vehicles." That tax credit shall be equal to or less than 30% of a qualifying vehicle's purchase price, where the vehicle is not powered by a gasoline or diesel internal combustion engine, but shall not exceed $7,500 where the qualifying vehicle's gross vehicle weight is less than 14,000 pounds. 26 U.S.C. §§ 45W(b)(2), (4). A "qualified commercial clean vehicle" under 26 U.S.C. § 45W(c) must be, among other things, manufactured by a "qualified manufacturer," as defined by 26 U.S.C. § 30D. Section 30D(d)(3) defines a "qualified manufacturer" as "any manufacturer (within the meaning of the regulations

prescribed by the Administrator of the Environmental Protection Agency for purposes of the administration of title II of the Clean Air Act….” 26 U.S.C. § 30D(d)(3).

23. Title II of the Clean Air Act defines a "motor vehicle" as "any self-propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2).

24. EPA regulations (as referenced in 26 U.S.C. § 30D(d)(3)) define a "manufacturer" as having "the meaning given in section 216(a) of the Clean Air Act (42 U.S.C. § 7550(1))." 40 C.F.R. § 1068.30. Section 7550(1) defines a "manufacturer" as including "any person engaged in the manufacturing or assembling of new motor vehicles…."

25. Section 13401 requires the Secretary of the Treasury to issue "proposed guidance with respect to the requirements under" Section 30D, as amended by the Inflation Reduction Act of 2022, by December 31, 2022. 26 U.S.C. § 30D(e)(3)(B). It also authorizes the Secretary of the Treasury to issue any other guidance or regulations necessary to administer Section 30D, as amended by the Inflation Reduction Act of 2022. *Id.* § 30D(e)(3)(A).

**DEFENDANTS' IMPLEMENTATION OF THE INFLATION REDUCTION ACT**

26. The Treasury Department and IRS announced their plan to issue proposed guidance on administering the Clean Vehicle Credit in Notice 2022-46, published October 11, 2022. The Notice summarized aspects of the Inflation Reduction Act of 2022, including the term "new clean vehicle" under Section 30D. The Treasury Department and IRS also requested public comments on "any questions arising from the [Inflation Reduction Act] amendments to § 30D" and other amendments, including "issues on which guidance is needed most quickly as well as the most important issues on which guidance is needed." The Notice further requested comments on the definition of "new clean vehicle," among other issues, and indicated that all submissions should be provided by November 4, 2022.

7

27. On October 5, 2022, nine members of the U.S. House of Representatives wrote to Janet Yellen, Secretary of the Treasury, explaining why Congress intended low-speed vehicles to be eligible for the Inflation Reduction Act's new clean vehicle tax credits. As the members of Congress explained, low speed vehicles "are street-legal vehicles with a maximum speed of 25 miles per hour (mph) that meet National Highway Traffic Safety Administration safety standards" and are "considered a 'motor vehicle' by the Department of Transportation (DOT) and under Section 216 of Title II of the Clean Air Act and may generally be driven on any road with a posted speed limit of 35 mph or less." Letter from the Hon. Rep. J. Luis Correa, *et al.* to the Hon. Janet Yellen (Oct. 6, 2022) (attached as Exhibit A).

28. Plaintiff Waev submitted comments in response to Notice 2022-45 on October 31, 2022. In those comments, Waev described its GEM street-legal, low-speed vehicles and their growing impact on shorter urban and suburban travel routes. Those comments requested that the contemplated guidance confirm that Waev's GEM vehicles qualify for the new clean vehicle credits. Specifically, Waev's comments asserted that its GEM vehicles meet the definition of "clean new vehicle" and "qualified manufacturer" under Section 30D. Further, Waev's GEM vehicles meet the Clean Air Act definition of "motor vehicle," which includes "any self-propelled vehicle designed for transporting persons or property on a street or highway," 42 U.S.C. § 7550(2), and that low-speed vehicle manufacturers (including Waev) meet the Clean Air Act's definition of "manufacturer." *Id.* § 7550(1).

29. Waev's comments acknowledged that a 1974 regulation promulgated by the United States Environmental Protection Agency ("U.S. EPA") defines "motor vehicle" in a manner inconsistent with Title II of the Clean Air Act. In particular, EPA's regulatory definition at 40 C.F.R. § 85.1703(e)(1) excludes vehicles with a maximum speed of 25 miles per hour or less

from the definition of "motor vehicle." Both Waev, and the nine members of Congress who wrote to Secretary Yellen, explained why this 1974 regulation, which is contrary to the Clean Air Act's plain language and issued nearly 25 years before the National Highway Traffic Safety Administration created the low-speed vehicle class of motor vehicle and GEM low-speed vehicles began production, did not reflect Congress' intent when creating the clean new vehicle tax credit in the Inflation Reduction Act.

30. Waev's comments further explained that recognizing the GEM vehicles' eligibility for the Inflation Reduction Act tax credits furthers Congress' goals of accelerating a shift to electric transportation (particularly with respect to non-affluent commuters), reducing carbon emissions and other pollutants, improving traffic safety, and meeting both federal and State targets for zero-emission vehicles.

31. The Treasury Department and IRS issued proposed regulations to implement the Section 30D new clean vehicle and Section 45W qualified commercial clean vehicle tax credits, among other issues. 88 Fed. Reg. 23,370 (Apr. 17, 2023) ("Proposed Rule"). Despite Waev's comments in response to Notice 2022-46, and the October 5, 2022 letter from nine members of Congress, the Proposed Rule did not address whether low-speed vehicles qualified for the new clean vehicle and qualify commercial clean vehicle tax credits.

32. Waev submitted comments in response to the Proposed Rule on June 15, 2023. Those comments reiterated that the GEM vehicles are "motor vehicles" under the Clean Air Act, that they meet all federal requirements to be driven on public roads, and that public policy and the purpose of the new clean vehicle and qualified commercial clean vehicle tax credit program demonstrated that Congress clearly intended for GEM vehicles to qualify.

33. On May 6, 2024, the Treasury Department and IRS published the Final Rule in the *Federal Register*. 89 Fed. Reg. 37,706. That Final Rule was approved by Defendant Douglas W. O'Donnell in his official capacity as Deputy Commissioner of the Internal Revenue Service and Defendant Aviva Aron-Dine in her official capacity as Acting Assistant Secretary of the Treasury (Tax Policy). 89 Fed. Reg. at 37,775.

34. In the Final Rule, Defendants determined that GEM vehicles do not qualify for the new clean vehicle or qualified commercial clean vehicle tax credit as despite GEM vehicles meeting the Clean Air Act definition of "a motor vehicle … defined as 'any self-propelled vehicle designed for transporting persons or property on a street or highway.'" 89 Fed. Reg. at 37,732 (quoting 42 U.S.C. § 7550(2)). Instead, Defendants relied on the U.S. EPA's regulatory definition, adopted in 1974, that "further define[s] a motor vehicle under title II of the Clean Air Act to exclude vehicles with maximum speeds of 25 miles per hour, which excludes low-speed vehicles." *Id.* (citing 40 C.F.R. § 85.1703(e)(1)).[1]

35. Waev's GEM vehicles meet all other conditions for the new clean vehicle and qualified commercial clean vehicle tax credits, listed at 26 U.S.C. § 30D and 26 U.S.C. § 45W, respectively, and would, except for the Defendants' determination in the Final Rule, qualify for those tax credits.

36. The Final Rule became effective on July 5, 2024.

37. On July 3, 2024, Waev separately filed a Petition for Review with the U.S. Court of Appeals for the District of Columbia Circuit asserting that EPA's regulatory definition, promulgated at

---

[1] The Final Rule appears to contain a typographical error as 40 C.F.R. § 85.1703(e)(1) does not exist. The correct citation should likely be 40 C.F.R. § 85.1703**(a)**(1).

39 Fed. Reg. 32,609 (Sept. 10, 1974), is unlawful and must be vacated. *See* Petition for Review, *Waev Inc. v. United States Environmental Protection Agency*, Case No. 24-1232 (D.C. Cir.).

## CLAIM FOR RELIEF:

### The Final Rule Violates the Administrative Procedure Act

38. Paragraphs 1 through 37 are hereby realleged as though set out in full.

39. Section 13401 of the Inflation Reduction Act of 2022, 136 Stat. 1954, amended the Internal Revenue Code at 26 U.S.C. § 30D to create a new tax credit for "new clean vehicles." Congress defined "new clean vehicles" at Section 13401(c), 136 Stat. 1955.

40. Section 13403 of the Inflation Reduction Act, 136 Stat. 1964, amended the Internal Revenue Code at 26 U.S.C. § 45W to create a new tax credit for "qualified commercial clean vehicles." Congress defined "qualified commercial clean vehicles" at Section 13403(c), 136 Stat. 1965, by reference to the requirements for "new clean vehicles" in 26 U.S.C. § 30D.

41. The Inflation Reduction Act's definition of "new clean vehicles," Congress included all vehicles that met the conditions listed at 26 U.S.C. §§ 30(D)(d)(1)(A)-(H).

42. Section 30D(d)(1)(D) defines "new clean vehicles" as being, in relevant part," those "treated as a motor vehicle for purposes of title II of the Clean Air Act." Title II of the Clean Air Act defines a "motor vehicle" as "any self-propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2).

43. Congress further adopted a definition of "motor vehicle" at 26 U.S.C. § 30D(d)(2) as "any vehicle which is manufactured primarily for use on public streets, roads, and highways (not including a vehicle operated exclusively on a rail or rails) and which has at least 4 wheels."

44. Waev's GEM vehicles meet both the Clean Air Act's statutory definition of "motor vehicle" and Section 30D's statutory definition of "motor vehicle."

45. Low-speed vehicle manufacturers, such as Waev, meet EPA's regulatory definition and the Clean Air Act's statutory definition of "manufacturer" for purposes of Title II of the Clean Air Act.

46. In the Final Rule, Defendants improperly relied on the U.S. EPA regulation that unlawfully narrows the definition of "motor vehicle" found in Title II of the Clean Air Act. Defendants' reliance on U.S. EPA's regulatory definition of "motor vehicles," instead of the Clean Air Act's definition, unlawfully prohibits Waev's GEM vehicles from qualifying for the new clean vehicle and qualified commercial clean vehicle tax credits despite Congress' clear intention that such vehicles should qualify. Defendants' reliance on the overly restrictive and improper U.S. EPA regulatory definition of "motor vehicle," instead of the statutory definition found in Title II of the Clean Air Act, was arbitrary, capricious, an abuse of discretion, and not in accordance with the Inflation Reduction Act of 2022.

47. Waev's comments on the Proposed Rule stated that the Inflation Reduction Act ties qualification for the new clean vehicle tax credit to the Clean Air Act's statutory definition of "motor vehicle." In the Final Rule, Defendants failed to adequately respond to that comment. This failure to adequately respond to a public comment was arbitrary and capricious and otherwise violates the Administrative Procedure Act.

48. In the Final Rule, Defendants asserted that low-speed vehicles do not qualify as "motor vehicles" "[b]ecause section 30D requires new clean vehicles to meet Clean Air Act standards, which exclude low-speed vehicles." 89 Fed. Reg. at 37,732. Nothing in Section 30D requires a new clean vehicle to meet any particular Clean Air Act standard. Therefore, Defendants rationale in excluding low-speed vehicles was arbitrary and capricious, an abuse of discretion, and not in accordance with the Inflation Reduction Act of 2022.

## REQUEST FOR RELIEF

Plaintiff Waev respectfully requests that the Court:

A. Declare that the Final Rule's exclusion of low-speed vehicles is arbitrary, capricious, an abuse of discretion, and otherwise unlawful under the Administrative Procedure Act, 5 U.S.C. § 706.

B. Hold unlawful, set aside, and vacate the Final Rule's exclusion of low-speed vehicles under 5 U.S.C. § 706.

C. Permanently enjoin Defendants from implementing or applying the Final Rule's exclusion of low-speed vehicles.

D. Grant any other legal or equitable relief as this Court deems just and proper.

Date: July 10, 2024

Respectfully submitted,

/s/ Justin A. Savage

Justin A. Savage, D.C. Bar No. 466345
Nathan E. Clukey, D.C. Bar No. 461535 (*application pending*)
James R. Wedeking, D.C. Bar No. 500033
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
jsavage@sidley.com
nclukey@sidley.com
jwedeking@sidley.com

*Counsel for Waev Inc.*

# Attachment A



# Congress of the United States
## House of Representatives
### Washington, DC 20515

October 5, 2022

The Honorable Janet Yellen
Secretary
United States Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

Dear Secretary Yellen:

As the Department of Treasury develops regulation and guidance for the implementation of the newly enacted Inflation Reduction Act (IRA), we write to urge the Department to clarify street-legal, low speed vehicles (LSVs) are eligible for the new electric vehicle (EV) tax credits.

Greater adoption of EVs is crucial to meeting the Biden-Harris Administration's goal to dramatically reduce carbon emissions and air pollution. As you know, the IRA will help accelerate our shift to a clean electric transportation future by providing $7,500 in tax incentives for the purchase of a new electric vehicle, so long as final vehicle assembly occurs in North America.[1,2] Even with the tax credit, we must ensure consumers have affordable options. We are encouraged by innovation in the industry, especially mobility options such as LSVs which are designed for shorter travel. LSVs are an affordable, safe, and clean alternative to traditional vehicles, especially for local trips, which account for nearly 50 percent of all travel in the United States.[3]

LSVs are not golf carts – these are street-legal vehicles with a maximum speed of 25 miles per hour (mph) that meet National Highway Traffic Safety Administration safety standards.[4] LSVs are considered a "motor vehicle" by the Department of Transportation (DOT) and under Section 216 of Title II of the Clean Air Act and may generally be driven on any road with a posted speed limit of 35 mph or less.[5,6]

---

[1] H.R. 5376, 117th Cong. §13403 (2022).
[2] Department of Treasury, *Treasury Releases Initial Information on Electric Vehicle Tax Credit Under Newly Enacted Inflation Reduction Act*, https://home.treasury.gov/news/press-releases/jy0923 (August 16, 2022).
[3] Department of Energy, Vehicle Technologies Office, *FOTW #1230, March 21, 2022: More than Half of all Daily Trips Were Less than Three Miles in 2021*, https://www.energy.gov/eere/vehicles/articles/fotw-1230-march-21-2022-more-half-all-daily-trips-were-less-three-miles-2021 (last visited August 24, 2022).
[4] 49 C.F.R. §571.3.
[5] 49 C.F.R. §571.3.
[6] 42 U.S.C. §7550(2).

On the initial reading of the IRA, LSVs should qualify for the new EV tax credits. The IRA amendments to Section 30D specifically cite the definition of a motor vehicle under the Clean Air Act, which includes "any self-propelled vehicle designed for transporting persons or property on a street or highway."

However, we are concerned a 1974 EPA regulation may create confusion. Despite the DOT statute and regulations, and the Clean Air Act's clear statutory definition, the Environmental Protection Agency (EPA) issued implementing regulations for the Clean Air Act in 1974 that exclude vehicles with maximum speeds of 25 mph or less from the EPA's definition of a motor vehicle.[7] At the time the regulations were issued, the LSV industry did not exist and the agency certainly did not contemplate the future availability of affordable, electric LSVs.

In order to reach our ambitious goals to cut carbon emissions in the transportation sector, we must promote a variety of clean transportation options, including LSVs. These vehicles are a great and affordable clean transportation option, especially in urban and suburban areas. As the Department develops its guidance on the EV credit, we urge the consideration of clarifying LSV eligibility under the Inflation Reduction Act.

We appreciate the Department's consideration and look forward to working with you to expand access to EVs and dramatically reduce tailpipe emissions.

Sincerely,

J. Luis Correa
Member of Congress

Nanette Diaz Barragán
Member of Congress

Ted W. Lieu
Member of Congress

Mike Quigley
Member of Congress

Donald S. Beyer Jr.
Member of Congress

---

[7] 40 C.F.R. §85.1703(e)(1).

_A. Donald McEachin_
A. Donald McEachin
Member of Congress

/S/
Jesus G. "Chuy" Garcia
Member of Congress

_Grace F. Napolitano_
Grace F. Napolitano
Member of Congress

_Jim Costa_
Jim Costa
Member of Congress